**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:18-CV-00029-HBB**


**GARY SORRELL**                                                                    **PLAINTIFF**


**VS.**


**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                                        **DEFENDANT**


**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Gary Sorrell ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 20) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is reversed and this matter is remanded to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered June 4, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

1

<u>FINDINGS OF FACT</u>

On November 18, 2014, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 12, 168, 172).   Plaintiff alleged that he became disabled on February 28, 2014, as a result of premature degeneration of the spine, arthritis, thyroid issues, and Chronic Obstructive Pulmanary Disease (COPD) (Tr. 12, 196).   On March 15, 2017, Administrative Law Judge Stacey L. Foster ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 12, 26).   Plaintiff and her attorney, Sara Martin Diaz participated from Owensboro, Kentucky (<u>Id.</u>).   Kenneth Boaz, an impartial vocational expert, participated from Paducah and testified during the administrative hearing (<u>Id.</u>).

In a decision dated May 2, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 12-19).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date, February 28, 2014 (Tr. 14).   At the second step, the ALJ determined that Plaintiff has the following "severe" impairments: degenerative disc disease; obesity; and COPD (<u>Id.</u>).   The ALJ also determined that Plaintiff's thumb pain, gastroesophageal reflux disease, hypothyroidism, Graves' disease, and hyperlipidemia are "non-severe" impairments within the meaning of the regulations (Tr. 14-15).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 15).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work except that he should not climb ladders, ropes, or scaffolds; he can no more than occasionally stoop, crouch, crawl, or climb ramps or stairs; he should have no concentrated

2

exposure to extreme cold, humidity, vibration, hazards, or pulmonary irritants such as fumes, odors, dusts, gases, or poor ventilation; and he would require the option to sit or stand at 30 to 60-minute intervals (Tr. 15). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work (Tr. 17).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 17-19). The ALJ noted that prior to February 9, 2017 Plaintiff was an individual closely approaching advanced age (Tr. 17). On February 9, 2017, Plaintiff's age category changed to an individual of advanced age (Id.). The ALJ found that prior to February 9, 2017, Plaintiff was capable of performing a significant number of jobs that exist in the national economy (Tr. 17-18). But beginning February 9, 2017, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 19). Therefore, the ALJ concluded that Plaintiff has not been under a "disability" from November 18, 2014 through February 8, 2017, but became disabled on February 9, 2017 (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 166-67). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d

680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step through February 8, 2017, and granted his claim at the fifth step beginning February 9, 2017.

Challenged Findings

Plaintiff disputes Finding Nos. 5, 10, and 12 (DN 15; DN 15-1 PageID # 882-89). Plaintiff challenges the residual functional capacity assessment in Finding No. 5 by arguing: (1) substantial

evidence does not support the ALJ's determination that Plaintiff's severe degenerative disc disease allowed him to perform light work; (2) the ALJ failed to adequately consider Plaintiff's severe hypothyroidism and Graves' disease; and (3) substantial evidence does not support the ALJ's assignment of weight to the opinion rendered by Dana Milligan, APRN, a treating source (DN 15; DN 15-1 PageID # 882-86). And, regarding Finding Nos. 10 and 12, Plaintiff asserts that substantial evidence does not support the ALJ's finding that Plaintiff was capable of performing a significant number of jobs that exist in the national economy from November 18, 2014 through February 8, 2017 (DN 15; DN 15-1 PageID # 886-89).

A.

1.    Arguments of the parties

Plaintiff's first challenge to Finding No. 5 asserts that substantial evidence does not support the ALJ's determination regarding the degree of limitation imposed by Plaintiff's degenerative disc disease (DN 15-1 PageID # 882-84). Plaintiff contends the ALJ failed to consider his radiculopathy and fully assess all of the objective evidence in support of his inability to engage in prolonged standing (Id.). Plaintiff relies on a June 19, 2015 MRI-confirming a "very large" L4-L5 right disc herniation that caused "moderate to severe" right recess stenosis-to substantiate his complaints of chronic pain, his inability to stand for long periods of time, and the necessity of undergoing the micro lumbar discectomy performed on September 16, 2015 (DN 15-1 PageID # 883 citing Tr. 366). Plaintiff argues that following the micro lumbar discectomy he regularly complained of radiculopathy on the other side of his lower back, there are objective findings and limititations in the record, and an MRI revealed a reoccurance of the L4-L5 herniation producing

moderate to severe right lateral recess narrowing and displacement of the L5 nerve root (Tr. 883-84 citing Tr. 563, 569, 579, 585, 595, 601, 744, 750, and 617).

Defendant responds by pointing out that the ALJ expressly discussed Plaintiff's claims of radicular pain and concluded the objective evidence did not support the significant degree of limitation alleged by Plaintiff (DN 20 PageID # 903-05).  Defendant asserts that Dr. Goebel's medical records substantiate the ALJ's findings regarding Plaintiff's back condition (Id.).  Further, Defendant argues that Plaintiff's complaints that his pain was not improving during the course of physical therapy are inconsistent with his own comments, memorialized in treatment notes, about his increased level of home and yard work (Id. citing 681-739, 728, 730, 719).  Further, Defendant points out that despite subjective complaints of lumbar pain and a positive straight leg test, Plaintiff's physical examination was essentially normal with a full range of motion, strength, and stability (Id. citing Tr. 562-63).

2.      Discussion

Finding No. 5 sets forth the ALJ's assessment of Plaintiff's residual functional capacity (Tr. 15).  This is the ALJ's ultimate determination of what Plaintiff can still do despite the exertional, postural, and environmental limitations imposed by his physical impairments.  *See* 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946.  The ALJ made this finding based on a consideration of medical source statements and all other evidence in the case record (Tr. 15-17).  *See* 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p.  In making this finding the ALJ assigned weight to the medical source statements in the record and assessed Plaintiff's subjective allegations (Tr. 15-17).  *See* 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

The relevant portion of the ALJ's decision reads:

> Although the claimant is alleging disability since February 28, 2014, he did not require a very substantial regimen of pain treatment for his degenerative disc disease during 2014. Notably, he did not repeatedly present to the emergency room on a monthly basis with pain complaints. Also, the claimant did not undergo neurosurgery until the latter half of 2015. He underwent a right L4-L5 lumbar microdiscectomy on September 16, 2015. (Exhibit 9F/26). Be that as it may, objective physical examination findings recorded less than two months before this surgery were not overly remarkable. Despite the claimant being identified as a candidate for a microdiscectomy, a July 23, 2015, treatment note endorsed by neurosurgeon Eric Goebel, M.D., nonetheless reflected that the claimant was documented to have good strength. His lumbar spine range of motion was also demonstrated to be good upon physical examination. Straight leg raise testing was negative bilaterally. (Exhibit 9F/3). Moreover, on December 15, 2015, Dr. Goebel indicated that a postoperative magnetic resonance imaging (MRI) scan of the claimant's lumbar spine was completely unremarkable. (Exhibit 9F/13).
>
> During 2016, the claimant reportedly developed radicular pain in his left lower extremity. Yet, a more recent treatment note dated December 8, 2016, reflected Dr. Goebel indicating that an updated MRI scan maybe revealed a small recurrence of issues at the L4-L5 level on the right, but nothing really significant. Dr. Goebel provided that there was nothing on the left at any level that would cause the claimant's symptoms. (Exhibit 9F/16). Further, Exhibits 4F and 8F reflect that 2016 treatment notes from the office of Tristan C. Briones, II, M.D., where the claimant received pain management treatment, regularly provided that his pain complaints just moderately limited his activities. Physical examination findings recorded on November 28, 2016, did suggest positive left passive straight leg raise testing and pain with flexion and extension of the claimant's lumbar spine. However, the claimant's strength and coordination were normal and there was no unsteadiness in the claimant's gait. (Exhibit 8F/5). What is more, the claimant has been documented to have engaged in activities not commensurate with the level of restriction he has alleged. For example, on May 4, 2016, the claimant was noted to have used a weed eater the day

> before. (Exhibit 7F/40). It was indicated on April 12, 2016, that the claimant was going to climb on his roof to change shingles. (Exhibit 7F/49).

(Tr. 16). Contrary to Plaintiff's assertion, the above paragraphs indicate the ALJ considered Plaintiff's radiculopathy and fully assessed all of the objective evidence concerning Plaintiff's purported limitations. Furthermore, substantial evidence in the record supports the above findings regarding Plaintiff's degenerative disc disease. The Sixth Circuit has instructed reviewing courts to affirm an Administrative Law Judge's findings based on substantial evidence, even when substantial evidence in the record supports a different conclusion. Gayheart v. Commissioner, 710 F.3d 365, 374 (6th Cir. 2013). In sum, Plaintiff's first challenge to Finding No. 5 fails.

## B.

Next, Plaintiff accuses the ALJ of failing to consider his severe hypothyroidism and Graves' disease in assessing his residual functional capacity (DN 15-1 PageID # 884-85). Plaintiff claims these conditions are chronic and result in extreme fatigue (Id.).

Defendant contends that the ALJ discussed Plaintiff's hypothyroidism and Graves' disease (DN 20 PageID # 905-06 citing Tr. 14-15). Defendant points out that the ALJ noted the absence of medical evidence to substantiate Plaintiff's claims regarding these conditions (Id.).

The Court will begin by observing that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec.,

9

2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion). The Court concludes that Plaintiff has at best referred to this issue in a perfunctory manner and has failed to identify any medical evidence supporting his position. Therefore, the claim is deemed waived.

Notwithstanding, Plaintiff seems to have turned a blind-eye to the ALJ's assement at the second step:

> In addition to the foregoing, it is noted that the claimant has been indicated to have a history of thumb pain, gastroesophageal reflux disease (GERD), and hyperlipidemia. (Exhibit 6F/13). Yet, the medical record appears to largely be devoid of significant objective abnormalities regarding these issues. It too is noted that the claimant has a history of postoperative hypothyroidism and Graves' disease. He underwent a thyroidectomy in 2005. (Exhibit 6F/13). He also suggested at the hearing that he had some issues with diplopia and knots on his legs. However, the medical record likewise appears to largely be devoid of routine documentation of significant symptoms related to hypothyroidism and Graves' disease. The claimant's thyroid issues seem to be adequately controlled with medication. Significant difficulties with diplopia and knots on the claimant's legs have not routinely be [sic] documented in the medical record since the alleged onset date either. Overall, none of the aforementioned issues has more than minimally affected the claimant's ability to work on a sustained basis as of the alleged onset date. Accordingly, no severe impairment can currently be found with respect to said issues.

(Tr. 14-15). Further, at the fourth step the ALJ considered all of Plaintiff's impairments in assessing his residual functional capacity (Tr. 15-17). Therefore, Plaintiff's second challenge to Finding No. 5 fails.

### C.

1. Arguments of the parties

Next, Plaintiff argues that substantial evidence does not support the ALJ's assignment of weight to the opinion rendered by Dana Milligan, APRN, a treating source (DN 15; DN 15-1

PageID # 885-86). Plaintiff asserts that the ALJ should have assigned great weight to Ms. Milligan's opinion.

Defendant argues the ALJ's assignment of weight to Nurse Milligan's opinion comports with applicable law and supported by substantial evidence in the record (DN 20 PageID # 907-10). Defendant points out that Nurse Milligan's extreme limitations were inconsistent with the evidence in the record (Id.).

2.      Discussion

The law is well established. The treating source rule applies to a "medical opinion" rendered by a "physician" or other "acceptable medical source" who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1527(a)(2) and (c), 416.902, 416.1513(a), 416.927(a)(2) and (c); Social Security Rule 96–2p; Gayheart v. Commissioner, 710 F.3d 365, 375–376 (6th Cir.2013). Additionally, the regulations expressly indicate only "acceptable medical sources" are qualified to render "medical opinions" about the nature and severity of a claimant's impairment, including limitations or restrictions imposed by the impairment. 20 C.F.R. §§ 404.1513(a) and (b)(6), 404.1527(a)(2), 416.913(a) and (b)(6), 416.927(a)(2). The regulations do not classify nurse practitioners as "acceptable medical sources." 20 C .F.R. §§ 404.1513(a), 416.13(a). Instead, the regulations indicate nurse practitioners are one of several types of "medical sources " that are classified as "other sources " evidence. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

Applying the applicable law to the evidence in the record, the treating source rule does not apply to Dana Milligan, APRN, because she is a nurse practitioner. 20 C.F.R. §§ 404.1502, 404.1513(a) and (d), 404.1527(c), 416.902, 416.1513(a) and (d), 416.1527(c). Although the

11

treating source rule does not apply to the opinion rendered by Ms. Milligan, Social Security Ruling 06–03p indicates the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) can be applied when the ALJ assigns weight to her opinion. This means the opinion can be weighed based on factors such as "the examining relationship (or lack thereof), specialization, consistency, and supportability ..." Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir.2013) (citing 20 C.F.R. § 404.1527(c)(2)). Further, other factors that tend to support or contradict Ms. Milligan 's opinion may be considered in assessing her opinion. Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). Notably, Social Security Ruling 06–03p indicates not every factor in 20 C.F.R. §§ 404.1527(c) and 416.927(c) will apply in every case. Additionally, Social Security Ruling 06–03p indicates assessing opinions from "other sources" will depend on the particular facts of the case and each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and the weighing of all the evidence in that particular case.

In pertinent part, the ALJ's decision reads:

> As for the opinion evidence, Exhibit llF contains a medical source statement endorsed by nurse practitioner Dana Brianne Milligan, which restricts the claimant to less than even sedentary work. Among other things, it sets forth that sitting, standing, and walking is limited to less than two hours a day, that the claimant will sometimes need an unscheduled break every one to two hours, and that he would miss more than four days of work per month. This opinion appears to rely more on the claimant's subjective assertions as opposed to the objective medical evidence, as it is not well supported by or very consistent with the aforementioned treatment notes from the practices of Dr. Goebel and Dr. Briones. Furthermore, Ms. Milligan is not actually treating the claimant for chronic pain. Exhibits 3F and lOF reflect that the treatment notes from her practice, Main Street Family Medicine, do not routinely demonstrate significant objective abnormalities that would justify

> the restrictive limitations she suggested. For these reasons, little weight can be afforded to the medical source statement at Exhibit llF.

(Tr. 17). Contrary to Plaintiff's assertion, the ALJ considered the nature of Nurse Milligan's treatment relationship with Plaintiff, her lack of specialization in the relevant area, the lack of consistency her opinions have with the record as a whole, and the lack of support from objective medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Further, the ALJ provided good reasons for assigning little weight to Nurse Milligan's opinion. The ALJ's findings are supported by substantial evidence in the record and comport with applicable law. Thus, Plaintiff's challenge fails.

### D.

1. Arguments of the parties

Plaintiff asserts that the vocational expert's testimony does not constitute substantial evidence to support Finding Nos. 10 and 12 because it is based on three job descriptions in the Dictionary of Occupational Titles (DOT) that are obsolete (DN 15; DN 15-1 PageID # 886-89). Plaintiff points out that 1980 is the most recent any of the three DOT job descriptions were updated (Id.). Further, Plaintiff contends that some of these jobs do not appear to exist when O-Net, a more reliable and up to date resource, is consulted (Id.). Plaintiff asserts that the vocational expert should have supplemented his testimony with a more up to date and reliable source, like O*NET (Id.). Plaintiff suggests that if this had occurred, it would have been clear to the ALJ that some of these jobs do not, in fact, exist anymore and the ones that do have vastly different descriptions and requirements than the DOT (Id.). Plaintiff also contends that at the regional level the number of positions for the three jobs does not qualify as significant (Id.).

Defendant contends that substantial evidence supports the ALJ's finding that prior to Plaintiff's reaching advanced age, she could perform a significant number of jobs that existed in the national economy (DN 20 PageID # 910-15). Alternatively, Defendant asserts that Plaintiff forfeited this obsolescence argument because he failed to make it before the ALJ and the Appeals Council (Id. citing Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016)). Defendant also points out that Plaintiff circumvented the vocational expert's opportunity to respond to this obsolescence question by failing to raise it on cross-examination (Id.). Further, Defendant argues that the vocational expert's uncontroverted testimony provided substantial evidence to support Finding No. 10 because the testimony did not conflict with information in the DOT (Id. citing Social Security Ruling 00-4p, Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605-06 (6th Cir. 2009), and Isaac v. Colvin, No. 3:13-cv-125, 2014 WL 2931579, at *12 (S.D. Ohio, June 27, 2014)). Defendant contends that the obligation falls on Plaintiff's counsel, not the ALJ, to bring out conflicts with the DOT through cross-examination (Id. citing Isaac, 2014 WL 2931579, at *12-13 and SSR 00-4p). Defendant reasons the vocational expert's testimony constituted substantial evidence to support Finding No. 10 because the ALJ complied with SSR 00-4p by asking the vocational expert to explain any conflicts between his testimony and the DOT (Id.).

2. Discussion

a. Waiver

The Court will begin with Defendant's argument that Plaintiff forfeited this claim by failing to raise it during the administrative hearing through cross-examination of the vocational expert. First, Defendant's reliance on Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir.

2016) is misplaced.   Kepke's argument before the courts concerned the Administrative Law Judge's failure to include a specific physical limitation in the hypothetical questions posed to the vocational expert.[1]   Id.   The Sixth Circuit held "[b]ecause Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument."   Id.   Implicit within this holding is the Sixth Circuit's recognition that Kepke knew about this physical limitation at the time of the administrative hearing and, therefore, she could and should have addressed the purported deficiency through cross-examination of the vocational expert.   Id.

   In contrast to the circumstances in Kepke, Plaintiff had no inkling that the vocational expert would identify laundry folder (DOT 369.687-018), ticket taker (DOT 344.667-010), and small products assembler (DOT 706.684-022) in response to the ALJ's hypothetical question (Tr. 47-49).   Thus, prior to the administrative hearing, Plaintiff could not have conducted research about these three jobs on the DOT and O*NET[2].   Moreover, because there are literally thousands of jobs identified in the DOT[3], it is unlikely that Plaintiff had sufficient personal knowledge about these three job descriptions to effectively cross-examine the vocational expert "on the fly." Therefore, to effectively cross-examine the vocational expert about the three jobs, Plaintiff would have needed to conduct research on the DOT and O*NET after the vocational expert identified these three jobs.   However, it would be impractical to conduct such research during the hearing.

---

1 The hypothetical questions to the vocational expert failed to specify the frequency of the claimant's need to alternate between sitting and standing.   Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016).

2 The United States Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.   https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

3 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTINTRO.HTM

Consider for example, the laundry folder (DOT 369.687-018) position which has not been updated since 1978. [4]   The DOT Crosswalk Search Option on O*NET provided no helpful information on this job. [5]   A more time consuming independent search of O*NET reveals "51-6011.00 - Laundry and Dry-Cleaning Workers" which may provide the information necessary to refine the vocational expert's testimony through cross-examination. [6]   In sum, this part of Defendant's waiver argument is without merit because it places an unreasonable burden on Plaintiff.

Defendant's attempt to rebut Plaintiff's argument with Social Security Ruling 00-4p and cases such as Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605-06 (6th Cir. 2009) and Isaac v. Colvin, No. 3:13-cv-125, 2014 WL 2931579, at *12-13 (S.D. Ohio, June 27, 2014) is misguided. The purpose of this policy ruling is to emphasize that before deciding whether a vocational expert's testimony supports a disability determination, Administrative Law Judges must identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by the vocational expert and information in the DOT, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000); Lindsley, 560 F.3d at 606; Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006).   This policy ruling does not impose a duty on Administrative Law Judges to further interrogate a vocational expert when he or she testifies that there is no conflict between the vocational opinion and information in the DOT.   See SSR

---

4  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM

5  The Crosswalk Search Option pulled up "51-9198.00 - Helpers--Production Workers", which does not mention laundry folders (or indeed laundry at all).   https://www.onetonline.org/link/summary/51-9198.00

6  Compare https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM with https://www.onetonline.org/link/summary/51-6011.00#JobZone

00-4p; <u>Lindsley</u>, 560 F.3d at 606. Further, when a vocational expert bases his opinion on the contents of the DOT and the Administrative Law Judge relies on that testimony, SSR 00-4p does not impose a duty on the Administrative Law Judge to resolve conflicts between the vocational expert's testimony and information from a different vocational publication. *See* <u>Poe v. Comm'r of Soc. Sec.</u>, 342 F. App'x 149, 158 (6th Cir. 2009) (the claimant's own vocational expert based his opinion on information from the Occupational Outlook Handbook). As the Ninth Circuit incitefully explained, "SSR 00–4p does not preclude reliance on the O*NET; it merely provides that where there is a conflict between the DOT and another source, and the ALJ relies on the other source, the ALJ must explain his reasons for doing so." <u>Lee v. Barnhart</u>, 63 F. App'x. 291, 292–93 (9th Cir.2003). Because such circumstances do not exist here, Defendant's reliance on SSR 00-4p is misguided.

The Court will now focus on the merits of Plaintiff's claim and Defendant's response. At the fifth step, the Commissioner has the burden of demonstrating that a "significant" number of jobs exist in the local, regional and national economies that the claimant can perform given her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 684 (6th Cir. 1992); <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990); <u>Allen v. Califano</u>, 613 F.2d 139, 145 (6th Cir. 1980). Essentially, the Commissioner can satisfy this burden in one of two ways. When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; <u>Born v. Sec'y of Health & Human</u>

Servs., 923 F.2d 1168, 1174 (6th Cir. 1990);Moon, 923 F.2d at 1181.    However, when a claimant's residual functional capacity does not coincide with the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert.    20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Here, the ALJ found that Plaintiff's residual functional capacity did not coincide with the criteria of Grid Rule 202.14 because Plaintiff could not perform a full range of light work (Tr. 18). Therefore, the ALJ used Grid Rule 202.14 as a framework in the decision making process and made a non-guideline determination based on the vocational expert's testimony (Id.).    Relying on the vocational expert's testimony in response to the hypothetical question, the ALJ found that prior to February 9, 2017, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed considering her age, education, work experience, and residual functional capacity (Tr. 18-19 citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).    Specifically, the vocational expert testified that the hypothetical individual could perform work as a laundry folder (DOT 369.687-018) which is light in exertional level, unskilled with an SVP of two, and there are 42,000 such jobs in the national economy; a ticket taker (DOT 344.667-010) which is light in exertional level, unskilled with an SVP of two, and there are 30,000 such jobs in the national economy; and a small products assembler (DOT 706.684-022) which is light in exertional level, unskilled with an SVP of two, and there are 60,000 such jobs in the national economy (Tr. 49).    Pursuant to SSR 00-4p, the ALJ confirmed that the vocational

expert's testimony was generally consistent with the information contained in the DOT, with the exception of the DOT not addressing an option to sit or stand at 30 to 60 minute intervals (Tr. 18-19, 50).

The Sixth Circuit has made clear that there is no "magic number" that qualifies as "significant" for the purposes of satisfying this prong of the disability inquiry. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). Instead, the Court must make a fact-specific inquiry that is guided by common sense:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. . . . A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; *the reliability of the vocational expert's testimony*; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

Id. (emphasis added). Here, Plaintiff asserts that the factors set out in Hall raise doubt as to whether the number of jobs identified by the vocational expert is significant. Specifically, Plaintiff asserts that the vocational expert's testimony is not reliable because it is based on obsolete occupational descriptions in the DOT.

The vocational expert based his testimony on three job descriptions contained in the DOT, a document published by the United States Department of Labor ("DOL") that was last updated in

1991.[7]   The regulations provide that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications."   20 C.F.R. §§ 404.1566(d), 416.966(d); Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The regulations include the DOT within their non-exhaustive list of examples of sources from which reliable job information is available.   20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5); *see* Wennersten v. Colvin, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive").   Thus, a vocational expert may base his testimony on job descriptions in the DOT.   However, the Sixth Circuit, albeit in an unpublished opinion, has made the following cautionary statement: "*common sense dictates* that when such descriptions appear obsolete, a more recent source of information should be consulted."   Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).

The DOT indicates the laundry folder (DOT 369.687-018) occupational description has not been updated since 1978, the ticket taker (DOT 344.667-010) occupational description has not been updated since 1980, and the small products assembler (DOT 706.684-022) occupational description has not been updated since 1979. [8]   Thus, when the vocational expert responded to the ALJ's hypothetical question on March 15, 2017 (Tr. 49), his testimony was actually based on occupational descriptions in the DOT that were approximately 39, 37, and 38 years old, respectively.

---

7 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTSPEC.HTM

8 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM

At the time of Plaintiff's administrative hearing before the ALJ, more current occupational descriptions were available. Specifically, the DOL replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.[9] *See* <u>Cunningham</u>, 360 F. App'x at 616; <u>Johnson v. Berryhill</u>, No. 4-16-CV-00106-HBB, 2017 WL 245326, *8 (W.D. Ky. June 6, 2017). Thus, like the Sixth Circuit in <u>Cunningham</u>, this Court will compare the job descriptions in the DOT with those set forth in O*NET to determine whether the vocational expert based her testimony on obsolete job descriptions.

The first DOT occupational description at issue reads as follows:

> **369.687-018 FOLDER (laundry & rel.)**
>
> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles. May be designated according to type of laundry folded as Shirt Folder (laundry & rel.) I; Wearing-Apparel Folder (laundry & rel.).
> *GOE: 06.04.35 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 78*

DOT (1991), *available at* https://www.oalj.dol.gov/LIBDOT.HTM (follow the "Service Occupations: 363.681-010 to 389.687-018" hyperlink).

---

9 https://www.onetcenter.org/dataCollection.html

The DOT Crosswalk Search Option for O*NET did not reveal a comparable job description. [10] The Court also utilized O*NET's Occupation Search, Find Occupations, and Advanced Search options but did not find a similar job description. The closest the Court could find on the O*NET was "51-6011.00 - Laundry and Dry-Cleaning Workers" which has the following occupational description:

> Operate or tend washing or dry-cleaning machines to wash or dry-clean industrial or household articles, such as cloth garments, suede, leather, furs, blankets, draperies, linens, rugs, and carpets. Includes spotters and dyers of these articles.

> Sample of reported job titles: Dry Cleaner, Laundry Aide, Laundry Assistant, Laundry Attendant, Laundry Housekeeper, Laundry Technician, Laundry Worker, Machine Operator, Personal Clothing Laundry Aide, Spotter

O*NET ONLINE *available at* https://www.onetonline.org/link/summary/51-6011.00#JobZone. However, these tasks are tangibly different from those identified in the DOT occupational description. In light of the fact that the DOT job description was approximately 39 years old at the time of the hearing and the description relied on by the vocational expert was not found on O*NET, the Court concludes the vocational expert's reliance on the DOT job description alone does not warrant a presumption of reliability. For this reason, the laundry folder position will not be considered in assessing whether a substantial number of jobs exists that Plaintiff can still perform despite his limitations.

---

10 The Crosswalk Search Option pulled up "51-9198.00 - Helpers--Production Workers", which does not mention laundry folders (or indeed laundry at all).  https://www.onetonline.org/link/summary/51-9198.00

The DOT occupational description for a ticket taker reads as follows:

**344.667-010 TICKET TAKER (amuse. & rec.)**

Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issued. Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire. May direct patrons to their seats. May distribute door checks to patrons temporarily leaving the establishment. May count and record number of tickets collected. May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file. May Be Designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event.

*GOE: 09.05.08 STRENGTH: L GED: R2 M1 L2 SVP: 2 DLU: 80*

DOT (1991), *available at* https://www.oalj.dol.gov/LIBDOT.HTM (follow the "Service Occupations: 301.137-010 to 362.687-018" hyperlink).

The DOT Crosswalk Search Option on O*NET reveals that the ticket taker (DOT 344.667-010) occupation is now designated "39-3031.00 - Ushers, Lobby Attendants, and Ticket Takers." [11] The O*NET report includes the following description, "[a]ssist patrons at entertainment events by performing duties, such as collecting admission tickets and passes from patrons, assisting in finding seats, searching for lost articles, and locating such facilities as restrooms and telephones." [12] Notably, the "Job Zone" section of the O*NET report indicates an SVP range of "4.0 to < 6.0" and explains that employees "need anywhere from a few months to one year of working with

---

[11] https://www.onetonline.org/link/summary/39-3031.00

[12] Id.

experienced employees."[13]   Thus, the O*NET description indicates a substantially higher level of specific vocational preparation than the approximately 37 year old DOT description that has an SVP of "2".   Moreover, the O*NET description indicates that technology skills for this occupation include office suite software, operating system software, optical character reader or scanning software, and spreadsheet software.[14]   Because of these substantial conflicts between the descriptions set forth in the DOT and O*NET, the vocational expert's dependence on the 37-year-old DOT listing alone does not warrant a presumption of reliability.   For this reason, the ticket taker position will not be considered in assessing whether a substantial number of jobs exists that Plaintiff can still perform despite his limitations.

The third DOT job description reads as follows:

> **706.684-022 ASSEMBLER, SMALL PRODUCTS I (any industry) alternate titles: bench assembler**
>
> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs.   Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools.   Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.   Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line.   May be assigned to different work stations as

---

13 Id.

14 Id.

> production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.
>
> *GOE: 06.04.23 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 79*

DOT (1991), *available at* https://www.oalj.dol.gov/LIBDOT.HTM (follow the "Benchwork Occupations: 700.130-010 to 713.684-018" hyperlink).

Defendant asserts that a similar job description "assemblers and fabricators" can be accessed by using "O*NET Code 93956" (DN 20 PageID # 913). However, Defendant did not provide a hyperlink citation that supports her claim and the Court was unable to substantiate her assertion. The Court entered the small products assembler DOT code **706.684-022** on the DOT Crosswalk Search Option for O*NET but the search did not reveal a comparable job description.[15] Instead, it provided a hyperlink for "51-9199.00 Production Workers, All Other" which does not provide any relevant information such as an occupational description, an exertional level designation, and an SVP range.[16]

The Court also utilized O*NET's Occupation Search, Find Occupations, and Advanced Search options but did not find a similar job description. For example, utilizing O*NET's Occupation Search option the Court entered "small products assembler" and found "51-2099.00 Assemblers and Fabricators, All Other".[17] But this hyperlink merely pulled up an O*NET summary report that in part reads:

---

15 https://www.onetonline.org/crosswalk/DOT?s=706.684-022&g=Go

16 https://www.onetonline.org/link/summary/51-9199.00

17 https://www.onetonline.org/link/summary/51-2099.00

51-2099.00 - Assemblers and Fabricators, All Other

All assemblers and fabricators not listed seperately.

"All Other" titles represent occupations with a wide range of characteristics which do not fit into one of the detailed O*NET-SOC occupations.   O*NET data is not available for this type of title.

https://www.onetonline.org/link/summary/51-2099.00   This summary report did not set forth relevant information such as an occupational description, an exertional level designation, and an SVP range.  For these reasons, the Court concludes that a search on O*NET did not reveal a comparable job description.

In light of the fact that the DOT job description was approximately 38 years old at the time of the administrative hearing and the description relied on by the vocational expert was not found on O*NET, the Court concludes the vocational expert's reliance on the DOT job description alone does not warrant a presumption of reliability.  For this reason, the small products assembler position will not be considered in assessing whether a substantial number of jobs exists that Plaintiff can still perform despite his limitations.

Thus, the discrepancies between the DOT and O*NET present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination was not supported by substantial evidence.  After all, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs."  Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014).   Notably, however, the undersigned is not concluding that these positions are obsolete, nor

that they do not exist in significant numbers.   Rather, this is a recognition that Plaintiff has created sufficient doubt to merit remand so that a vocational expert can determine whether these positions, as performed in the modern economy, are still occupations available to the Plaintiff given his age, experience, education, and residual functional capacity.

In light of the above conclusion, the final decision of the Commissioner will be reversed and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether the DOT listings, specifically the mail sorter or mail clerk, produce sorter, and small products assembler descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ.   *See* <u>Faucher v. Sec'y of Health & Human Servs.</u>, 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:        Counsel